Joe M. Evans, Jr. v. Commissioner. George P. Evans v. Commissioner.
Evans v. Commissioner
Docket Nos. 1448-65, 1449-65.
United States Tax Court
T.C. Memo 1966-131; 1966 Tax Ct. Memo LEXIS 155; 25 T.C.M. (CCH) 663; T.C.M. (RIA) 66131; June 16, 1966
*155 Joe M. Evans, Jr., pro se, Dell City, Tex. Sidney B. Williams, for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined the following deficiencies in the income taxes of petitioners: Petitioner
Taxable Year
Deficiency
Joe M. Evans, Jr.
1962
$9,255.11
George P. Evans
1962
7,352.69
The only issue for decision in these consolidated cases is whether the petitioners realized a short-term capital gain when they exercised an option to repurchase their farm and equipment on January 2, 1962, and resold such property on the same day at a substantial profit. Resolution of this issue depends on whether certain financing arrangements entered into by petitioners with Hugh Newton and J. W. Smith on January 7, 1961, with respect to their farm constituted a sale with an option to repurchase. Findings of Fact Some of the facts have been stipulated and are so found. Petitioner Joe M. Evans filed his individual Federal income tax return for the calendar year 1962 with the district director of internal revenue at Austin, Texas. Petitioner George P. Evans was married during 1962 to Helen A. Evans and they *156 filed their joint Federal income tax return for that calendar year with the district director of internal revenue at Austin, Texas. Helen is not a party in these proceedings. The petitioners are brothers who formed a partnership in 1950 for the purpose of operating a farm they owned in Yoakum County, Texas. The venture proved unsuccessful from the start. The petitioners met their successive annual operating losses by increasing the outstanding indebtedness on the land. The indebtedness grew from $37,000 in 1950 to $80,000 in 1959. By 1960 the financial situation of the partnership was so critical that it was in danger of going into bankruptcy. The petitioners continuously sought additional loan funds or a buyer for the farm who would pay them enough to satisfy their obligations. In August 1960 Joe heard of a man in Lubbock, Texas, who made loans to farmers in petitioners' situation. In an attempt to contact this man, Joe called on J. W. Smith of the Citizens National Bank in Lubbock. The petitioners had previously dealt with Smith when he had been president of a bank in Lovington, New Mexico. Smith suggested that he and his associate Hugh Newton could supply the petitioners with *157 the financial help they needed. During the remaining months of 1960, Smith, Newton, and the petitioners engaged in extended negotiations pertaining to the farm. At one point Smith and Newton offered to buy the farm outright for $130,000, but the petitioners rejected this offer because they felt it was too low. Petitioners offered to sell the farm, without an option to repurchase, for $160,000 or $170,000 but Smith and Newton rejected such offer. Finally, on January 7, 1961, the parties entered into a transaction whereby the petitioners executed a sales contract on the property transferring it to Smith and Newton for $130,000 with an option to repurchase within 5 years for $150,000. In addition, Smith and Newton leased the property back to the petitioners for 5 years at an annual rent of $15,000 per year. The contract of sale reads, in part, as follows: 1. Sellers agree to sell, and the Buyers agree to buy the following described land, to wit: All of Section No. 659 and all of Section No. 660, all in Block D, John H. Gibson Survey, Yoakum County, Texas, together with all improvements thereon. * * *
5. At the time this transaction is closed and Sellers have completed *158 the purchase of said land, then Sellers shall execute to Buyer a Five (5) year farming lease on said land, at an annual rental of $15,000.00 in cash, said rental to be paid annually in advance, with the first years rental to be paid upon the execution of said rental contract. Said contract shall further provide for the annual rental payments to be paid on or before the anniversary date of said lease contract each year, and shall provide that time is of the essence, and should said annual rental payments fail to be paid as and when they are due, then said rental contract shall immediately be cancelled and shall thereafter be of no further force or effect. Said rental contract shall further provide for all irrigation pumps and other improvements on said property to be fully maintained by Lessees, and at Leassees [Lessees] sole expense, and upon the expiration of said rental agreement all of said property shall be returned to Lessors in as good condition as at the beginning of the lease term, reasonable wear and tear thereof alone excepted. * * *
7. It is further agreed that when this transaction is closed that Buyers herein shall thereupon extend and grant to Sellers herein *159 the right and option to purchase, or repurchase, said premises from Buyers herein, or their heirs or assigns, at any time within a period of five (5) years from the date this transaction is closed, and in the event of such repurchase the purchase price shall be the total sum of $150,000.00. * * *
Upon the closing of this transaction, Sellers shall execute to Buyers a General Warranty deed to said property, together with such other instruments as may be deemed necessary to fully carry out the agreement of the parties as herein set out, and said property shall be conveyed free and clear of any liens of every nature, except those assumed by Buyer as herein set out, and Buyers shall assume the payment of all taxes for 1961 and subsequent years, but Sellers shall pay all taxes for 1960 and all prior years. The warranty deed executed by the petitioners reads, in part, as follows: THAT WE, George P. Evans and wife, Helen A. Evans, both of Lea County, New Mexico, and Joe M. Evans, Jr., a single man, of Yoakum County, Texas, jointly and severally for and in consideration of the sum of One Hundred Thirty Thousand and No/100 Dollars ($130,000.00) to us in hand paid by J. W. Smith and *160 Hugh Newton * * *. * * *
For and in consideration of the foregoing, the undersigned have Granted, Sold and Conveyed, and by these presents do Grant, Sell and Convey unto the said J. W. Smith and Hugh Newton of the County of Lubbock, State of Texas, all that certain lot, tract or parcel of land described as follows, to-wit: All of Section No. 659, Block D, John H. Gibson Survey, Yoakum County, Texas; and All of Section No. 660, Block D. John H. Gibson Survey, Yoakum County, Texas, SAVE AND EXCEPT all of the oil, gas and other minerals in, on and under and that may be produced from said Section No. 660 * * *
TO HAVE AND TO HOLD The above described premises, together with all and singular, the rights and appurtenances thereto in anywise belonging unto the said J. W. Smith and Hugh Newton, their heirs and assigns forever; and we do hereby bind ourselves, our heirs, executors and administrators, to Warrant and Forever Defend all and singular the said premises unto the said J. W. Smith and Hugh Newton, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof. On January 18, 1961, J. W. Smith and Hugh Newton conveyed *161 the farm to the South Plains Business Development Corporation, a corporation that was solely owned by them. Petitioners continued living on and operating the farm throughout 1961. They listed the farm with several real estate agencies and notified sublessees who worked certain cotton acreage on the farm that it was up for sale and would therefore be unavailable for leasing in 1962. Arrow Farm, Inc., expressed an interest in purchasing the farm. On October 25, 1961, the petitioners entered into a contract to sell the farm to Arrow Farm, Inc. On October 25, 1961, Joe notified Smith by letter that the petitioners desired to exercise their option to repurchase the farm. The letter reads, in part, as follows: The undersigned, for myself and for George P. Evans, do hereby notify you, and by copy of this letter we also notify Hugh Newton, that under lease contract and option to purchase entered into by us, dated January 15, 1962, [1961] we have the option to purchase the following described land, to wit: All of Sections 659 and 660, all in Block D, John M. Gibson Survey, Yoakum County, Texas. Paragraph 4 of said contract required a 60 day notice of our desire to exercise this *162 option, and this is such notice. We plan to close this transaction on January 2, 1962, and pay you the consideration set out in such option on said date, upon delivery of the Warranty Deed called for in such contract. On January 2, 1962, South Plains Business Development Corporation conveyed the farm to petitioners and Helen Evans for $150,000 as called for in the lease and option agreement. They in turn conveyed it to Arrow Farm. Both conveyances were accompanied by warranty deeds. Petitioners discussed the Smith-Newton transaction with Vernon A. Townes, their attorney, and he prepared the sales contract involved. The petitioners read all the documents involved before signing. Petitioners did not report the sale of the farm in their returns for the year 1962. Instead they each reported gain from the sale of the farm of $61,787.08 on their 1961 returns, which they computed in the following manner: Sales price
$188,597.25
Less cost and expense: Land
$38,760.00
Buildings and equipment (net)
15,587.20
Commissions
8,895.00
Legal (etc.)
854.20
Travel
926.69
Total
65,023.09
Long-term capital gain
$123,574.16
Respondent determined that two *163 sales occurred, one in 1961 for $130,000 and another on January 2, 1962, for $208,395 as set forth below: 1961
1962
Sale price
$130,000.00
$208,395.00
Less cost and expense: Land
$38,760.00
$150,000.00
Buildings and equipment (net)
15,587.20
Commissions
8,895.00
Legal (etc.)
571.35
926.69
Travel
54,918.55
282.85
160,104.54
$ 75,081.45 [1]
$ 48,290.46 [2]
Opinion If the transaction of January 7, 1961, was not a sale, as the petitioners contend, then their capital gain on the sale to Arrow Farm, Inc., is long term. If, however, the petitioners did sell their farm on January 7, 1961, and repurchased it just before the sale to Arrow Farm, then their capital gain is short term. Petitioners signed a sales contract, lease agreement, and warranty deed on January 7, 1961, with Smith and Newton. On October 25, 1961, petitioners notified Smith of their desire to exercise the option to repurchase. On January 2, 1962, petitioners obtained a warranty deed from Smith *164 and Newton before attempting to transfer title in the property to Arrow Farm, Inc. In addition to the plain provisions of the signed documents, both Smith and Newton testified that they intended the transaction to be a purchase of the property and entered into it as such. Against this formidable proof, the petitioners offered Joe's testimony and that of George's wife, Helen. They testified that they did not regard the transaction as a sale, but only a device to gain the additional time they needed to secure a "real" buyer. They referred to the Arrow Farm transaction as a "straight sale" and characterized the Smith-Newton transaction, with its leaseback and repurchase provisions, as being something less than what it purports to be, contending that in reality it was a loan. This contention simply is not supported by the record. The normal indicia of a loan are missing. The petitioners were not obligated to repay the principal sum. They did not mortgage the property, but transferred legal title to it. In order to reacquire title the petitioners were compelled to pay a premium of $20,000. They contemplated a repurchase provided they were able to find someone who was willing to pay *165 more than $150,000 for it. If the fair market value of the land had gone down rather than up, they were under no obligation to exercise their option. The risk of any depreciation in land values was shifted from the petitioners to Smith and Newton. Even the right to repurchase was limited to a five year period. The factual question before us must necessarily be resolved upon the record made by the parties. The written documents and oral testimony establish to our satisfaction that the Smith-Newton transaction resulted in a sale of the property with an option to repurchase retained by the petitioners. Their holding period terminated at that time and did not begin until they repurchased the property. . Ownership of an option, standing alone, does not constitute a holding of the property itself, , affirmed per curiam (C.A. 9, 1964), and an option was the only interest the petitioners retained during the remainder of 1961. The petitioners sold the property to Arrow Farm on January 2, 1962, for $208,395 and, consequently, any gain upon that sale is taxable in the year *166 1962. Although they argue that the Arrow Farm sale occurred in 1961 because of the agreement dated October 25, 1961, there is nothing to show that this document was anything other than an executory contract. Moreover, petitioners did not receive the sale proceeds from Arrow Farm until January 2, 1962, and the deed to Arrow Farm was neither delivered nor recorded until January 2, 1962. While it is not clear from the record when the corporation took possession, Joe testified that he did not leave the farm until "the early spring of 1962." Finally, petitioners did not and could not have made a valid conveyance prior to January 2, 1962, since the farm was owned by Smith and Newton through South Plains until that date. We realize that the petitioners had a pressing need for funds which put them at a severe disadvantage when dealing with Smith and Newton, both of whom possessed far superior knowledge of the tax implications as of the various agreements involved. Perhaps because of these considerations the petitioners' brief cites four cases which stand for the general proposition that we must reach a decision based on the underlying realities of the transaction rather than legal technicalities. *167 If petitioners mean that we must look to the substance rather than the form of these agreements, we quite agree. We have done so and we believe the form used accurately reflects what the parties in fact did. If, however, the petitioners are asking us to apply equitable principles which ignore the legal effect of their actions, we cannot do so. We lack that power. . Whatever may be said about the resulting financial burden thrust upon them, the fact remains that the petitioners read the sales contract, lease, and warranty deed involved in the Smith-Newton transaction before signing them. We think they knew what they were doing. We cannot now remedy what has proven to be a bad bargain for them by holding that they were not responsible for their own actions. Accordingly, we sustain the respondent's determination. Decisions will be entered under Rule 50. Footnotes
1. One half taxable as long-term capital gain to each petitioner in 1961. ↩
2. One half taxable as short-term capital gain to each petitioner in 1962.↩